**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-11-00150-001-TUC-DCB (BGM) |
| Plaintiff, | **ORDER** |
| v. | |
| Manuel Osorio-Arellanes, | |
| Defendant. | |

On January 11, 2021, the Defendant filed a pro se motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). (Doc. 900.) Pursuant to General Order 20-28, the Federal Public Defender reviewed the motion and the Defendant's Bureau of Prisons (BOP) medical records. The Federal Public Defender does not recommend appointment of counsel because the motion lacks merit. The Court has considered the Government's Response, and there has been no Reply. The Court denies the motion.

On February 10, 2014, the Court accepted a stipulated-sentence, pursuant to a plea agreement for first-degree murder. The Court imposed a 30-year prison sentence followed by five years of supervised release. (Doc. #233.)

This Court may modify the term of imprisonment under 18 U.S.C. § 3582(c)(1)(A)(i), if "extraordinary and compelling reasons warrant such a reduction." The sentence reduction must be "consistent with applicable policy statements issued by the Sentencing Commission," *id.*, as found at U.S.S.G. § 1B1.13, and are binding on this Court. *Dillon v. United States*, 560 U.S. 817, 825–27 (2010).

The Sentencing Commission's policy statement describes six extraordinary and compelling reasons: 1) defendant has a terminal illness, defined as a "serious and advanced illness with an end of life trajectory"; 2) defendant has some other physical or medical condition, physical or cognitive impairment, or a deteriorating physical or mental condition because of the aging process that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"; 3) defendant is at least 65 years old, experiencing a serious deterioration in physical or mental health because of the aging process, and has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less; 4) the caregiver for defendant's children has died or been incapacitated; 5) the defendant's spouse is incapacitated, leaving the defendant as the only available caregiver for his spouse; 6) any other extraordinary and compelling reason that, as determined by the Director of the BOP, warrants a sentence reduction. U.S.S.G. § 1B1.13 application note 1 (citing 18 U.S.C. § 3582(c)(1)(A)(i)).

Equally important, the Court may reduce a sentence for one of these extraordinary and compelling reasons, only if it determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2) & application note 1.

The Court does not construe the "extraordinary and compelling reasons" under 18 U.S.C. § 3582(c)(1)(A) and U.S.S.G. § 1B1.13, strictly, to require either a "terminal illness" or "a serious medical condition that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." Such a limited view of compassionate release would make it unavailable for COVID-19, even for high-risk inmates until they contracted the virus and death appeared imminent. Instead, the Court applies the Sentencing Guidelines' catch-all provision, which allows the Court to find an "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 Application note 1(D).

The Defendant's assertion for compassionate release is essentially that his incarceration increases the risk that he will contract COVID-19. Even generously defining "extraordinary and compelling reasons," the Defendant's reasons miss the mark. The Court agrees with the Federal Public Defender's review of Mr. Osorio's pro se filing and his prison medical records, that they fail to disclose a prima facie claim to a sentence reduction for "extraordinary and compelling" reasons under the two prong rubric. First, he has no medical condition that is considered to create a high risk of death should he contract COVID-19.

Second, the Defendant is danger to the community. He admitted to participating in the attempted robbery of drug traffickers in December 2010, where he and his co-conspirators armed themselves with assault rifles and searched for drug traffickers to rob. When they encountered Border Patrol BORTAC agents, they engaged in a firefight that resulted in Agent Terry's murder. Defendant's willingness to engage in this inherently dangerous criminal enterprise, involving large quantities of drugs, that resulted in the tragic death of a Boarder Patrol agent supports the Court's conclusion that the defendant poses a danger to the community to which he will return. These types of large-scale criminal enterprises, involving large amounts of dangerous drugs, are the type that pose considerable danger to the community. *United States v. Stone*, 608 F.3d 939, 947 (6th Cir. 2010), *United States v. Hare*, 873 F.2d 796, 798 (5th Cir.1989) (stating that "[t]he risk of continued narcotics trafficking on bail constitutes a risk to the community"), United States v. Leon, 766 F.2d 77, 81 (2d Cir.1985) ( "[I]t is clear that the harm to society caused by narcotics trafficking is encompassed within Congress' definition of 'danger'"). Danger to a community is not limited to a geographic location in the United States where the offense of conviction has effects abroad. *United States v. Hir*, 517 F.3d 1081, 1088-89 (9th Cir. 2008). If released, the Defendant would be deported and pose a risk to communities in Mexico, which are already burdened with rampant drug trafficking and violent crime. He poses a risk to communities in the United States because his offense conduct evinces a willingness to cross illegally into the United States to commit serious offenses

The Court need not, however, even make these meritorious determinations because his motion fails procedurally. He did not administratively exhaust a request for compassionate release to the Director of the BOP.

Under 18 U.S.C. § 3582(c), the Director of the BOP may make a motion for the compassionate release of a prisoner. Following the implementation of the First Step Act in 2019, an inmate may also file a motion, subject to the exhaustion requirement described below. Compassionate release is both a drastic and permanent remedy, subject to several strict statutory conditions, including administrative exhaustion. Defendant bears the burden of proving he meets all elements of eligibility for a sentence reduction. 18 U.S.C. § 3582(c)(1)(A); *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) ("defendant, as the § 3582(c)(2) movant, bears the burden of establishing" eligibility for sentencing reduction); *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue.").

The statute expressly provides a defendant can file a motion only "after the defendant has fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier …." 18 U.S.C. § 3582(c)(1)(A). Administrative exhaustion is a congressionally mandated claims-processing rule that must be applied when invoked by the government. *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020). "Where Congress specifically mandates it, exhaustion is not merely appropriate but 'required.'" *Barron v. Ashcroft*, 358 F.3d 674, 677 (9th Cir. 2004) (citing *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)). Even considering the COVID-19 pandemic, the Court "does not have the authority to excuse an inmate's failure to comply with the exhaustion provision of the FSA." *United States v. Holden*, 2020 WL 1673440, at *10 (D. Or. Apr. 6, 2020).

This Court finds that if Congress had wanted to suspend the exhaustion requirement because of COVID-19, it could have done so when it passed the CARES Act in late March

of 2019. It did not, and this Court will not waive it. *See United States v. Epstein*, 2020 WL 1808616, at *5 (D.N.J. Apr. 9, 2020) (declining to waive administrative exhaustion requirement: "[I]t is ultimately Congress that must act to provide some relief from the statute's strict proscription, and to address the emergent need of inmates during this pandemic. See, e.g., the [CARES Act].")

The Defendant asserts he sought compassionate release from FCI Petersburg: "I have requested a compassionate release from the Warden (Andrews) in F.B.O.P. – Petersburg. It's been past thirty days and I haven't heard from the Warden." (Doc. 900, p. 5.) The Government, however, has investigated this assertion and found no documentation reflecting this request, and FCI Petersburg has no record of defendant requesting compassionate release. (Response (Doc. 902) at 6.)[1]  Before the Court can consider his motion, defendant must file a request with the warden. 18 U.S.C. § 3582(c)(1)(A); *United States v. Weidenhamer* (Weidenhamer II), 2020 WL 1929200 at *2-3 (Ariz. April 21, 2020) (denying COVID-related motion for compassionate release because defendant failed to exhaust administrative remedies); *United States v. Tomlinson*, 2020 WL 1935522 at *1-2 (Ariz. April 22, 2020) (same).

The Court finds that the BOP's administrative review process plays a crucial role and should not be usurped. The Attorney General has directed BOP to prioritize transferring vulnerable inmates, especially those at institutions with COVID-19 outbreaks, to home confinement in appropriate circumstances. For each compassionate release request, BOP carefully considers the inmate's medical condition and his plan for release, among other things. See BOP Program Statement 5050.50 (January 17, 2019), Compassionate Release/Reduction in Sentence: Procedures for Implementation [], available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf. The Court finds that the BOP is in the best position to assess the merits of the Defendant's request for compassionate release in the first instance.

//////

---

[1] There has been no Reply.

- 5 -

1 **Accordingly**,

2 **IT IS ORDERED** that the Motion for Compassionate Release (Doc. 900) is
3 DENIED.

4 Dated this 22nd day of February, 2021.

David C. Bury
United States District Judge